## Trustees of the Proprietors of Kingston, Appellant, v. Kingston Coal Co.

*Land law—Connecticut titles—Warrant and survey—Deeds—Lease—Mortgage—Lapse of time—Landlord and tenant—Denial of landlord's title—Trusts and trustees—Constructive trust—Waste—Acts of April 4, 1799, 3 Sm. L. 362; April 8, 1826, P. L. 270; March 30, 1822, P. L. 97; April 22, 1856, P. L. 532.*

In an action of trespass for removing coal it appeared that the plaintiff, the trustees of the proprietors of Kingston, was incorporated by the Act of March 30, 1822, P. L. 97, to hold the property and rights of the committee of the proprietors of Kingston Township. The act confirmed all leases made by the committee. In 1799 a Connecticut claimant conveyed a lot known as Lot No. 5, containing a part of the coal in question to the committee, in consideration of conveyance to him of a lot which the committee held for public use. In 1800 the committee executed to one Hoyt, his heirs and assigns, a lease of Lot No. 5, for 999 years. No mention of minerals was made in the lease, and the same day Hoyt executed to

the committee a mortgage on Lot No. 5, and an adjoining lot, containing a general warranty of title purporting a fee absolute in the mortgagor. The lease and mortgage were both recorded. Prior to the execution of these papers Hoyt had entered an application for Lot No. 5. A survey·was made to him, and the commissioners under the Act of April 4, 1799, 3 Sm. L. 362, certified that he was the owner, and subsequently, in 1804, the Commonwealth issued a patent to him, his heirs and assigns, to have and hold the same free and clear of all restrictions and reservations as to mines, royalties, etc. In the proceedings to procure the patent Hoyt mentioned the lease. The defendant claimed the coal in controversy by mean conveyances from Hoyt. The grantor in each of the conveyances treated the estate involved as though it were a fee in the original patentee. Plaintiff never asserted any claim to the coal until 1913, when suit was brought. *Held,*

(1) That the fact that Hoyt mentioned the lease in his proceedings to secure the patent, was not controlling, in view of the fact that he was required to do so by law, and also in view of the fact that the committee had accepted from him on the date of the alleged lease a mortgage in which the latter warranted an absolute title in himself.

(2) That under the Act of April 4, 1799, 3 Sm. L. 362, if the grantor of Lot No. 5 to the committee was a Connecticut claimant, he and his successors in title were bound by the certificate and patent issued to Hoyt.

(3) That the plaintiff could not contend that the title out of the Commonwealth to Hoyt was held by him in trust for the committee, inasmuch as the lease, based upon an uncertified claim of the Connecticut claimant, was void, and should be so treated after the great lapse of time.

(4) That the Act of April 8, 1826, P. L. 270, continuing the relation of landlord and tenant between Connecticut claimants and their lessees, cannot be applied to a case where an estate in landed property has been treated, for more than a century, as a fee out of the Commonwealth, and where the court is bound to presume that Hoyt was the sole actual settler entitled to a patent, and that therefore plaintiff's predecessors in title had no legal right to a certificate or patent.

(5) That the rule that a tenant will not be heard to deny his landlord's title, will not be applied in favor of a grantee of a Connecticut claimant, where there is nothing to show that the claimant had in any way availed himself of the privileges accorded to him by the Act of 1799, and where the lease to Hoyt uses language indicating an intent on the part of the committee not to obligate itself to defend the possession of its tenant.

234 KINGSTON TRUSTEES *v.* KINGSTON COAL CO.

(6) That the Act of March 30, 1822, P. L. 97, incorporating plaintiff and affirming leases theretofore made by them, does not help the plaintiff, inasmuch as the act applies only to lands "originally appropriated to public use," and Lot No. 5 was not such land.

(7) That even if there were a trust in favor of the committee, the trust was not a dry one, but was a constructive one, to be enforced prior to the Act of 1856, within twenty-one years, or, after that act, within five years from the time the trust accrued with the right of entry.

(8) That this rule, under the Act of 1856, applies to an action of waste, where, in such proceeding, plaintiff depends upon the establishment of a trust to sustain his title to the land in dispute.

Satterlee v. Matthewson, 16 S. & R. 169, distinguished.

Argued May 5, 1919. Appeal, No. 171, Jan. T., 1917, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1913, No. 1229, for defendant n. o. v., in case of Trustees of the Proprietors of Kingston v. Kingston Coal Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Trespass for an alleged wrongful mining of coal. Before GARMAN, J.

The jury returned a verdict for $1,600 but judgment was entered for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*George Wharton Pepper*, with him *Arthur L. Turner, Willard H. Goodwin* and *John E. Jenkins*, for appellant. —The Act of 4th April, 1799, vested in the settlers in Kingston, one of the seventeen townships of Luzerne County, a complete equitable estate in the lands they held: Carkhuff v. Anderson, 3 Binney 4; Ensline v. Bowman, 6 Binney 462; Barney v. Sutton, 2 Watts 31; Bird v. Smith, 8 Watts 434; Griffin v. Fellows, 81½ Pa. 114; Jordan v. Chambers, 226 Pa. 573.

Part of the land so held was impressed with a trust for public education: Klenker v. School Directors of McKeesport, 11 Pa. 444; Nauman v. Weidman, 182 Pa. 263.

By process of exchange the land in question in this case became vested in the Kingston Town Committee for the educational use above specified; and the interest of the committee thus acquired was demisable under the law of Pennsylvania: Levinz v. Will, 1 Dallas 430; Evans v. Jones, 1 Yeates 172; Sweeney's Lessee v. Toner, 2 Dallas 129; Sweeney v. Toner, 1 Yeates 499; Galloway v. Ogle, 2 Binney 468; Caufman v. Presbyterian Cong. of Cedar Spring, 6 Binney 59; Satterlee v. Matthewson, 16 S. & R. 169.

The lease given by the Kingston Town Committee to Daniel Hoyt was duly authorized by vote of the inhabitants, was duly recorded by the lessee and constituted him a tenant of the town committee with all the usual incidents of tenancy under the law of Pennsylvania: Devinney v. Reynolds, 1 W. & S. 328; St. Vincent's Roman Catholic Cong. v. Kingston Coal Co., 221 Pa. 349.

When Hoyt appeared before the commissioners under the Act of 1799 and asked for a certificate which would enable him to obtain patent for the land in question, his only standing was as lessee thereof, and he produced no other evidence of his right, except his lease and the record of the authorizing vote.

Hoyt's recorded relationship to the committee being that of lessee, the law imposed upon him the obligation to hold for his landlord such confirmation of the landlord's title as he might acquire in his own name. The commissioners were powerless to destroy this obligation and the certificate discloses no attempt on their part to do so.

An outstanding title to land acquired by a tenant during his term cannot be set up against his landlord or interposed to justify a use of the land in breach of the terms of the tenancy: Caufman v. Presbyterian Cong., 6 Binn. 59; Rankin v. Tenbrook, 5 Watt 386; Koons v. Steele, 19 Pa. 203; Jackson exdem Tuthill v. DuBois, 4 Johns. 210 (N. Y.); Gallaway v. Ogle, 2 Binn. 468; Russell v. Titus, 3 Grant 295; Stewart v. Roderick, 4 W. & S. 188.

If the title acquired be inchoate in the landlord at the time the tenancy began, the acquisition inures to the landlord's benefit and the tenant acquires no right thereunder: Cleavinger v. Reimar, 3 W. & S. 486; Matthews's App., 104 Pa. 444; Sweeney v. Toner, 2 Dallas 129; Cooper v. Smith, 8 Watt 536.

The trust thus created by Hoyt's acquisition of the title inchoate in his landlord was a dry trust and as such was executed, either

.(a) By the statute of uses and the common law of Pennsylvania; or

(b) By the Curative Act of 30th March, 1822: Ross v. Barber, 5 Watts 357; Griffin v. Fellows, 81½, 114.

Having established the plaintiff's title to the reversion in the land in question, plaintiff contends that the decisions of this court in litigation between the present plaintiff and the Lehigh Valley Coal Company, as reported in 236 Pa. 350; 241 Pa. 469, and 241 Pa. 481, rule every point in this case arising out of occurrences subsequent to 1822: Ulrich v. Beck, 13 Pa. 639; Bellas v. McCarty, 10 W. 13; St. Vincent's R. C. Cong. v. Kingston Coal Co., 221 Pa. 349; Atherton and others v. Trustees of the Proprietors of Kingston, 14 L. L. R. R. 130; Trustees of Proprietors of Kingston v. Lehigh Valley Coal Co., 236 Pa. 350.

The predecessors of the appellant were Connecticut settlers within the meaning of the fifth clause of the Act of April 4, 1799, and would have been entitled to receive certificate and patent had they appeared in person rather than in the person of their tenant, Daniel Hoyt, before the commissioners sitting under that act.

The Act of 11th April, 1795, had no application to the seventeen certified townships of Luzerne County, and, therefore, no application to the locus in quo, situate in Kingston Township, which was one of the seventeen.

On April 3, 1800, the predecessors of the appellant, being entitled to certificate under the Act of 1799, were

empowered by law and authorized by vote to make a valid lease and did, in fact, make such a lease to the predecessor of the appellees; and when persons searching the title derived through him came upon a patent which recited the Act of 1799, it became and was their duty to include in their search the proceedings before the commissioners as recorded at Harrisburg and such conveyances, leases or other agreements affecting the locus in quo as had been recorded in Luzerne County subsequently to the Act of 1799.

*Ira Jewell Williams* and *F. W. Wheaton,* with them *Benj. R. Jones,* for appellee.—The proprietors of the township, who were the original settlers, had no title to the coal. If the decree of Trenton had been in favor of Connecticut the coal in question without further conveyancing would have remained the property of the Susquehanna company and would not have been subject to a trust in favor of the proprietors of the township: Dailey v. Avery, 4 S. & R. 281; Strickland v. Strickland, 6 S. & R. 94.

The lease from the town committee to Daniel Hoyt did not constitute him a tenant with the usual incidents of tenancy under the law of Pennsylvania.

The title which Hoyt acquired through his certificate, survey, warrant and patent was the title of the Commonwealth of Pennsylvania, and paramount to any title in the plaintiffs: Thompson v. Clark, 7 Pa. 62.

The law is that a tenant is never estopped from denying the landlord's title to land not included in the lease: Pederick v. Searle, 5 S. & R. 236; Dikeman v. Parrish, 6 Pa. 210; Townsend v. Boyd, 217 Pa. 386; Dougherty v. Welshans, 233 Pa. 121.

After a century appellee's unchallenged title out of the Commonwealth is beyond attack: Strickland v. Strickland, 6 S. & R. 94; Balliot v. Bauman, 5 W. & S. 150.

After a century plaintiff cannot sustain a resulting trust out of an alleged relation of landlord and tenant or

otherwise: McBarron v. Glass, 30 Pa. 133; Strimpfler v. Roberts, 18 Pa. 283.

OPINION BY MR. JUSTICE MOSCHZISKER, June 21, 1919:

The Trustees of the Proprietors of Kingston, a Pennsylvania corporation, claiming to be the owners in fee of a certain tract of land in Luzerne County, sued the Kingston Coal Company, a like corporation, alleging the latter held part of the premises in question under a long term lease, and defendant had committed waste by mining coal therefrom, during six years immediately preceding suit, to the value of $2,000, which plaintiff sought to recover.

The evidence being principally documentary, with no contest over material facts, the trial judge directed a verdict for plaintiff, but the court in banc entered judgment for defendant n. o. v.; this appeal followed.

In colonial times, both Pennsylvania and Connecticut claimed sovereignty over the territory which contains the property in dispute; a Connecticut organization, called the Susquehanna Company, made grants to emigrants from that colony for lands within what was known as the "Seventeen Townships of Luzerne County," and also appropriated certain lots in each township to "the public use," these latter being under the control of town committees. The Connecticut claims were not conceded by this State, and the controversy led to actual warfare between Pennsylvania and Connecticut settlers, wherein much blood was shed and hard feelings engendered; taking cognizance of these conditions, Congress appointed commissioners to settle the controverted questions of sovereignty and title, who, by the Decree of Trenton, 1782, unanimously decided in favor of Pennsylvania; for historical data see Barney v. Sutton, 2 Watts 31, 33, et seq.; Enslin v. Bowman, 6 Binney 462, 466; Mitchell v. Smith, 1 Binney 109, 115.

There were numerous diverse individual claims to much of the land embraced in the territory covered by

the Decree of Trenton, with controversies relating thereto between Pennsylvania and Connecticut settlers, and also between members of the latter class claiming against one another. To solve this sad state of affairs, several acts of assembly were passed, one in 1795 (3 Smith's Laws 209) entitled "An Act to prevent intrusions on lands within the counties of......Luzerne," prescribing penalties for anyone, not possessing title derived from Pennsylvania, who might intrude upon or deal in such lands, or combine with others so to do; and another in 1799 (3 Smith's Laws 362), which provided, inter alia, for compensation to Pennsylvania claimants, and for the appointment of commissioners to determine disputes over lands in the seventeen townships, with power to grant certificates and patents to such Connecticut claimants as were actual settlers upon the land at or before the time of the Decree of Trenton, but the act permitted only such "original settlers, their heirs or assigns," to apply for or obtain certificates and patents: see also supplemental statutes, 3 Smith's Laws 366, et seq., and id. p. 526.

December 28, 1799, Lot No. 4, held for public use by plaintiff's predecessors, was conveyed to one Lawrence Myers, a Connecticut claimant, who, by way of exchange, deeded to his grantors Lot No. 5, the premises now in dispute, "in trust for the use of the people of said Township of Kingston." April 3, 1800, the town committee executed a deed, purporting to "lease and demise" the lot thus acquired (No. 5), for 999 years, to Daniel Hoyt, "his heirs and assigns," that is to say, all "rite, possession, interest and claim" which they were "impowered by lease to convey." Hoyt signed this instrument, agreeing to pay $40.20 annually for six years and, at the expiration of the seventh year, a further sum of $710.20, no mention being made as to mining or mining rights. On the same day, Hoyt executed a mortgage for $670, covering Lot No. 5 and an adjoining lot, No. 6, to the town committee. containing a general warranty of title, purporting a fee

absolute in the mortgagor. The lease and mortgage were both recorded.

January 3, 1800, prior to the date of the last mentioned instruments, Hoyt had entered an application for Lots Nos. 5 and 6, and, October 20, 1801, he filed his "oath of single title"; December 1, 1802, a survey was made to him, and, January 16, 1804, the commissioners under the Act of 1799 certified that he was the owner. On February 4, 1806, a warrant issued to Hoyt, reciting payment of purchase money by him; and, February 21, 1806, the survey was duly returned. March 29, 1806, the Commonwealth of Pennsylvania issued a patent to "Daniel Hoyt, his heirs and assigns," to "have and to hold the said tract or parcel of land [Lots Nos. 5 and 6] forever, free and clear of all restrictions and reservations, as to mines, royalties, quit-rents, or otherwise." Since 1800 Hoyt and his successors have paid all taxes.

April 1, 1874, Samuel Hoyt, a grandson of Daniel, executed a coal lease to Waterman and Beaver, embracing within its description 59½ acres of Lot 5. While showing the chain of title to this lease, defendant proved several duly recorded fee simple deeds, bearing dates prior to 1822, from Daniel Hoyt to various vendees, for parts of the land in controversy, still other portions passing under Hoyt's will, and all being traced down, by numerous deeds, wills, and judicial proceedings, to the lessor in the coal lease of 1874, and, by like means, from the lessees named in that instrument to the Kingston Coal Company, the present defendant; in each instance the estate or interest involved was treated as though a fee had vested in the original patentee. Mining under the lease of 1874 began in that year, a bore-hole and air-shaft showing upon the surface in 1895.

From 1800 to 1913, when this suit was commenced, plaintiff and its predecessors appear never to have asserted any right of ownership or property in Lot No. 5; but, to sustain the present action, it now contends that, Daniel Hoyt having accepted the town com-

mittee lease in 1800, the patent from Pennsylvania, which issued to him in 1806, immediately accrued to the benefit of his landlord, and, to that end, the patentee took the legal title in trust. Therefore, plaintiff says, despite the grant from the State, Hoyt and his successors held possession merely as tenants, and were guilty of waste the moment they commenced to depreciate the value of the reversion by mining coal.

Plaintiff seeks to sustain its position in various ways. First, it contends that, since Daniel Hoyt, on the application for the certificate which led to his patent, noted the lease of 1800, he then admitted holding thereunder. In view of relevant legislation requiring him to mention and deliver up to the commissioners all documents of title which he possessed (not merely those upon which he relied), we fail to see that the notation in question, at this great length of time, should be given the controlling significance claimed for it, particularly considering the counterbalancing fact that plaintiff's predecessors accepted from Hoyt, on the very date of the alleged lease, a mortgage wherein the latter warranted an absolute title to Lot No. 5 as being in himself.

If Myers, who conveyed the land in controversy to plaintiff's predecessors, was, as now asserted by it, a Connecticut claimant, then, under the Act of 1799, he, and those to whom he transferred his alleged interest or estate, were bound by the certificate and patent issued to Hoyt (Dailey v. Avery, 4 S. & R. 280, 287-8; Enslin v. Bowman, 6 Binney 462, 469, 472; Strickland v. Strickland, 6 S. & R. 93, 101; Shepherd v. Com., 1 S. & R. 1, 14; Perkins v. Gay, 3 S. & R. 325, 327, 330), and, after this great lapse of time, considering the numerous changes which have taken place, it is rather late to attack the title thus gained; but, plaintiff says, we do not attack the patent, our contention is that, while the title out of the Commonwealth to Hoyt was perfectly good, by reason of a well established rule of law the patentee held the title, thus gained, in trust for his landlord, and

we, as the successors of that landlord, now have a right to so assert. There are, however, several conclusive answers to this contention.

Plaintiff's immediate predecessors, in 1800, when the Hoyt lease was made, held such possible rights as they might then have possessed in Lot No. 5, as assignees of a Connecticut claimant (Myers); and, so far as this record shows, neither he, they nor anyone before them had ever made an effort to assert, prove, or have certified in or by a Pennsylvania tribunal their (now alleged) incipient title. No matter how much, upon the showing of special equities, we afterwards may have wavered on the subject, at the date in question—both under the Act of 1795, supra, and on general principles (Mitchell v. Smith, 1 Binney, 109, 120, 121, 123)—all deeds, leases, and other contracts, purporting to transfer uncertified claims of Connecticut settlers (except as expressly permitted by the statutes of Pennsylvania), were considered unlawful and void (Mitchell v. Smith, supra, p. 123; Enslin v. Bowman, 6 Binney 462, 466; Dailey v. Avery, 4 S. & R. 280, 288); this being the case, so far as the rights of those claiming through the Hoyt patent are concerned, the earlier lease to him can and, after such a lapse of time, should be treated as a void instrument—in accord with the prevailing rules of law in 1800; and that is so without regard to what rights between the original parties might have been judicially declared, if sooner asserted, under different conditions, when the real purpose intended to be accomplished was capable of ascertainment, determination and enforcement, without any question of prejudice to the rights of others, who purchased subsequent to, and in reliance upon, the patent.

True, the Act of April 8, 1826, P. L. 270, provides that "The relation of landlord and tenant shall exist and be held as fully and effectually between Connecticut settlers and Pennsylvania claimants, as between other citizens of this Commonwealth, on the trial of any cause now pending or hereafter to be brought within this Common-

wealth"; but this cannot be taken to mean that, when an estate in landed property has been treated, for more than a century, as a fee out of the Commonwealth, nevertheless the relation of landlord and tenant must be held to exist, under a lease executed prior to the original patent, so as, in effect, to vest the fee simple title (declared by the State to be in the patentee) in the lessor and its successors, thus giving to them the benefit of a patent, which, so far as the record indicates, they could not have obtained lawfully for themselves. We make the last statement, for the reason that, since Hoyt (the person named as tenant in the lease) was successful before the legal tribunal authorized to act in the premises, it must now be conclusively presumed he was the sole "actual" settler entitled, and that plaintiff's predecessors, as well as Myers, who conveyed to them, had no legal right whatever to a certificate or patent: Griffin v. Fellows, 81* Pa. 114, 120.

At the time of the ancient transactions now under discussion, the rule that a tenant will not be heard to deny his landlord's title, would certainly not have been permitted to prevail against the public policy of this State that Connecticut settlers (representing a class who, on behalf of that colony, had attempted to usurp the sovereignty of Pennsylvania) should have no rights in the lands claimed by them, except such as might, ex gratia, be recognized by the statutes of Pennsylvania: Dailey v. Avery, 4 S. & R. 280, 288. When the lease was made, in 1800, the only right given Connecticut settlers under our law, was to appear before the commissioners appointed by the Act of 1799, and there have their claims adjudicated; and, if satisfactory proof of actual settlement upon the land at or before the Decree of Trenton were presented, they might secure a certificate of title, to be followed by a patent: Enslin v. Bowman, 6 Binney 462, 468, 469.

Of course, at this late day, it is impossible to know just what right of title Myers (who conveyed Lot No. 5 to

plaintiff's predecessors) claimed; but it may be noted that, in the lease of 1800, his assignee, the town committee, apparently endeavored to select words of grant which would not obligate it to defend the possession of its tenant, restricting itself to letting what "rite" or "interest" it might be "impowered" to convey "by lease"; which, to say the least, does not tend to make a strong case for the assertion, after a century, of the absolute right now sought to be enforced.

The Act of 1822, P. L. 97, incorporating plaintiff, does not help it, for several reasons, among others, because, so far as the statute affirms leases theretofore made by the Committee of the Proprietors of the Township of Kingston, it expressly applies only to those "concerning lands originally appropriated to the public use," and Lot No. 5 was not "originally" so appropriated; again, section 5 of this statute, which provides that interests "vested" in "any person or persons for the use of said proprietors [plaintiff's predecessors], shall vest in said corporation," fails plaintiff, because, for reasons already stated, it cannot be said, under the relevant facts as they existed, that any property rights were then "vested" in Hoyt "for the use of said proprietors."

If there were nothing else in this case, it is plain that plaintiff and its predecessors have slept too long on the alleged right now sought to be enforced; for, assuming, while not admitting, the correctness of the theory that, when the patent was issued to Hoyt, the latter held the title thus acquired in trust for his landlord, this would not be a dry trust which would execute itself. If the trust existed at all, it was a constructive one which had to be judicially established (Strimpfler v. Roberts, 18 Pa. 283, 302; McKean, etc., v. Clay, 149 Pa. 277); prior to the Act of 1856, P. L. 532, a proceeding for this purpose must have been commenced within 21 years from the inception of the alleged trust, and after that act (section 6) within five years from the time such "trust accrued with the right of entry": McBarron v. Glass, 30

Pa. 133, 135. Should we assume the correctness of plaintiff's theory, it is apparent that, when mining commenced, waste was committed, which gave a right of reëntry (Griffin v. Fellows, 81½ Pa. 114, 122; Trustees of Kingston v. L. V. C. Co., 236 Pa. 350, 357) if plaintiff could judicially establish the trust for which it contends, and thus set aside the title of those who were taking the coal; but such trust would have to be established, if at all, within five years from the time the first mining was done, which gave the "right of entry," or, in the words of the statute, from the time "the trust accrued with the right of entry."

There is authority for the position that an action of waste, involving no question of plaintiff's title, may be brought at any time during the period of the spoliation, recoverable damages being restricted to losses incurred during the last six years (Trustees of Kingston v. L. V. C. Co., 241 Pa. 469, 473); but if, in such a proceeding, one depends upon the establishment of a trust to sustain his title to the land in question, the action must be brought within the statutory period, the same as though the prime purpose of the suit were to "enforce [an] implied or resulting trust as to realty": Sec. 6, Act of 1856, supra.

An actual Connecticut settler within the meaning of the Act of 1799, supra, had such a possibility of title that encumbrances, etc., created by him would bind the land, if an estate were subsequently patented to him or his assignees (Carkhuff v. Anderson, 3 Binney 3; Bird v. Smith, 8 Watts 434); moreover, if a lease were created by such a claimant, and he afterwards obtained a patent for the land, he could not, as against his lessee, or the latter's assignees, deny the validity of the contract: Providence Trustee's App., 2 Walker 37; Griffin v. Fellows, supra. This, however, is far from saying that, if a mere Connecticut claimant made a lease and the demised land were shortly afterwards patented to the lessee, also a Connecticut claimant, the title thus solemn-

ly adjudged to the latter will be held to accrue to the former, in a case like the present, where the alleged (landlord) rights of such lessor are no way acknowledged, exercised or asserted until more than a century has run, during all of which time title has been treated and marketed as a fee simple in the lessee under a patent out of the Commonwealth.

The case before us is quite different from Satterlee v. Matthewson, 16 S. & R. 169, cited by plaintiff; there the action was ejectment, and against the original lessee. At the first trial of the cause, plaintiff recovered, although defendant set up a patent from the Commonwealth antedating the lease; which patent had been purchased on his behalf after the term commenced. We reversed because the tenancy, having arisen out of a contract between Connecticut settlers, was void: see 13 S. & R. 133. Before the next trial, the Act of 1826, supra, was passed, and, holding that it validated the tenancy, we sustained a verdict for plaintiff; but HUSTON, J., who wrote the opinion, said (p. 178) he was satisfied the patent purchased by the defendant did not cover the land in dispute. Be this as it may, the case is distinguishable from the one at bar, as either the original parties to the contract or others directly representing them still had possession, not only when the litigation arose but when the validating Act of 1826, supra, was passed; while here the litigation did not arise until 112 years after the alleged lease, when, of course, all the original parties had long since passed away, and the record shows many conveyances from the patentee, presumably to bona fide purchasers, recorded prior to the passage of the Act of 1826. In connection with the cases just discussed, see Satterlee v. Matthewson, 2 Peters 380.

A final point urged by defendant against plaintiff's right to recover, is that, since the original grants from the Susquehanna Company reserved for future disposal "all beds of mine, iron, ore and coal," and

since it is conceded the lease to Hoyt did not include mineral rights, therefore the coal here in controversy never passed under that instrument, or vested in any-one else than the patentee of the Commonwealth, and, as to that particular estate, Hoyt was no other than an owner in fee; which, so far as the coal is concerned, excludes the relation of landlord and tenant with all its incidents. It is not necessary to do more than mention this contention, for we deem the broader grounds pre-viously discussed sufficient to sustain the judgment about to be entered.

We conclude that, on the facts at bar, defendant was fully warranted in resting upon the Hoyt patent (Balliot v. Bauman, 5 W. & S. 150; WOODWARD, J., in Grotz v. Le-high & W. Coal Co., 1 Kulp 53, 54); but, as already shown, even should we go back of that instrument, de-fendant's title cannot now be successfully attacked; therefore plaintiff has no substantial ground to complain of the judgment entered by the court below, which is ac-cordingly affirmed.