Consolidation Coal Company *v.* Friedline,
Appellant.

Argued October 4, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Thomas J. Itell,* for appellant.

*Charles H. Ealy,* with him *Charles F. Uhl* and *Simon
K. Uhl,* for appellee.

OPINION BY PARKER, J., December 20, 1938:

This is an action of trespass for injuries to real prop-
erty. The suit was brought by the plaintiff, claiming
possession and title, against the defendant for wrong-
fully removing coal from plaintiff's land. The parties
by written stipulation waived the right of trial by jury
and submitted the decision to the court below pursuant
to the provisions of the Act of April 22, 1874, P. L. 109
(12 PS §688). The common pleas court found for the
plaintiff and we find no error.

On July 27, 1901 Nelson J. Shaulis and wife, an
alleged common source of title, conveyed to Oliver
Hoblitzell all the coal in a certain tract of land con-
taining 79 acres 24 perches, situated in Lincoln Town-
ship, Somerset County. By various mesne conveyances
this title became vested in plaintiff. On April 1, 1905
Nelson J. Shaulis and wife conveyed to William Fried-
line, the defendant, 82 acres 94 perches, which compre-
hended the 79 acres 24 perches, excepting and reserv-

ing all the coal and mining rights conveyed to Oliver Hoblitzell by the deed to which we first referred.

The defendant, while admitting these conveyances, relied upon a patent from the Commonwealth to him dated July 17, 1908 for land containing 31 acres 7.3 perches, part of the tract of 79 acres 24 perches claimed by plaintiff. The locus in quo of the trespass was all on the larger tract and partly on the smaller one. The plaintiff, however, showed a prior warrant issued February 10, 1836 to Christian Emmert for 400 acres of land of which the parcels above described are a part, a subsequent survey dated October 18, 1837 and a return of the survey to the land office. The consideration for the granting of the patent to defendant was the monies paid by Emmert at the granting of the warrant and the patent fees of $15, provided for by Act of May 5, 1899, P. L. 229 (64 PS §503). It was also shown that defendant in his application for a patent relied upon the Emmert warrant and return of survey and upon the deed from Shaulis and wife to him dated April 1, 1905 which deed specifically excepted the underlying coal.

The patent of July 17, 1908 issued to the defendant will not under the facts here proved avail the defendant as against the prior title of the plaintiff. "In Pennsylvania a warrant and survey, attended with payment of the purchase-money, is to be considered, as against all but the Commonwealth, in the same light as the *legal* estate in *England,* and is not to be distinguished, as to the mode of conveying, entailing, and barring entails, from estates *strictly legal: Burkart v. Bucher,* 2 Binn. 355; *Duer v. Boyd,* 1 Ser. & R. 203; *Caines v. Grant,* 5 Binn. 120; *Maclay v. Work,* Id. 158. A patent is only *prima facie* evidence of title: 4 Binn. 213; 2 Binn. 12. The patentee is a trustee for the right owner: 1 Ser. & R. 203. It has been the custom to suffer the validity of a patent to be contested, and the question generally is, not who has got the patent, but who

was entitled to it, on principles of law and equity, at the time it was issued: 5 Binn. 157": *Gingrich v. Foltz,* 19 Pa. 38, 40.

While the patent recites that the right and interest of Christian Emmert had become vested in William Friedline, the conveyances set up by him in his application for a patent show that he did not have the title to the coal and in any event, it is well settled that recitals in a patent are not evidence at all against one holding by settlement, or other right, originating prior to the date of the patent: *Penrose v. Griffith,* 4 Binney 231; *Bell v. Wetherill,* 2 S. & R. 350; *Bonnet v. Devebaugh,* 3 Binney 175; *Gingrich v. Foltz,* supra.

"But a warrant and survey, returned and accepted, on which the purchase-money has been paid, confers a perfect title against all the world but the Commonwealth, which has itself the legal title only as security for the patenting fees. On payment of them, the owner has a right to a patent, which, however, as to all third persons, gives him no better title than he had before. The patentee, like the Commonwealth, is but a trustee for the true owner": *Hoffman v. Bell,* 61 Pa. 444, 454. Also see *Com. v. Bierly,* 37 Pa. Superior Ct. 496, 502. The defendant's position is even weaker for he claims under the same warrant as the plaintiff and relies upon intermediate conveyances which specifically recognize the title of the plaintiff.

Defendant also suggests that the plaintiff cannot recover because he did not show that he was in possession of the coal at the time of the alleged trespass. It was held in *Collins v. Beatty,* 148 Pa. 65, 23 A. 982, that since the defendant there had been in possession of the locus in quo at the time of the alleged trespass and *for some years before* plaintiff could not maintain an action in trespass quare clausum fregit. We do not find any merit in this contention for there was ample proof that the plaintiff had not only exercised his right of possession, but that the defendant had recognized

that right. Such possession as defendant enjoyed was at best a mere scrambling possession. It was shown partly by the pleadings and partly by oral proofs that in 1935 defendant had trespassed on these premises and taken coal therefrom for which he subsequently settled. While it may not appear clearly that such trespasses were within the limits of the land patented to defendant, it was a part of the entire tract of 79 acres to which plaintiff had title. In addition, both tracts were occupied and operated by plaintiff's lessee, the Quemahoning Creek Coal Co. The only possession of the coal shown by the defendant was in connection with the former trespass for which he settled and the present trespass. "It has been said 'if both parties are in some sense in possession, such mixed possession inures to the benefit of him who has the legal title': 38 Cyc. 1013. And the temporary occupancy of the land by an intruder does not constitute an ouster of possession so as to prevent recovery: *Hughes v. Stevens,* 36 Pa. 320; *Rifener v. Bowen,* 53 Pa. 313; *Wilmoth v. Canfield,* 76 Pa. 150": *Humes v. Kramer,* 286 Pa. 251, 255, 133 A. 262. It is clear that the plaintiff was not prevented from maintaining this action by the character of possession proved or claimed by the defendant.

Finally defendant contends that the plaintiff's claim is barred by the Act of April 22, 1856, P. L. 532, §6 (12 PS 83), arguing that the limitation therein provided ran from the date the patent was issued. He relies principally on *Strimpfler v. Roberts,* 18 Pa. 283; *Silliman v. Haas,* 151 Pa. 52, 25 A. 72, and *Kingston Trustees v. Kingston Coal Co.,* 265 Pa. 232, 108 A. 718. These cases have no application to the facts in this case.

A comparison of the facts in the Kingston case with those in the case we are considering will show that the positions of the two plaintiffs are just reversed. Justice (later Chief Justice) MOSCHZISKER was careful to point out in the opinion in the Kingston case (p. 246) that

"the alleged (landlord) rights of such lessor [plaintiff's predecessor in title] are no way acknowledged, exercised or asserted until more than a century has run, during all of which time title has been treated and marketed as a fee simple in the lessee [defendant's predecessor] under a patent out of the Commonwealth." In addition, it was pointed out (p. 244) that the trust there alleged was not a dry trust which would execute itself. Here the defendant never entered into actual possession of these premises, that is the coal, until 1935 when he conceded he was a trespasser by settling for such trespass. On the other hand, the plaintiff to the knowledge of the defendant had actual possession of the coal in 1914 and 1915 through its lessee, another coal company. In 1908 the defendant was in possession of the surface of this land under a deed which recognized plaintiff's right and title to the coal. His possession is presumed to correspond with and continue in accord with the title under which he entered. That being the situation, he procured a patent. This was not followed by an ouster of plaintiff or by any notice of an adverse claim or by any interference with plaintiff's possession until 1935. Then plaintiff's possession was recognized by the settlement. All this goes to show that either the title to the coal was held by the defendant for the plaintiff or that the defendant was a mere naked trustee and that the trust executed itself. It must be remembered that the consideration had been paid in full to the Commonwealth for the conveyance of this land long before 1908 by the former owner, a common source of title, and all that remained to be done to procure a patent was to pay a fee for the mere issuing of the patent. The limitation prescribed by the Act of 1856 could not possibly begin to run until defendant exercised some hostile act towards plaintiff's possession, different from the possession under which he entered.

Judgment affirmed,