## Gast, Appellant, *v.* Engel.

Argued November 21, 1951. Before DREW, C. J., STERN, STEARNE, LADNER and CHIDSEY, JJ.

*Arthur H. James,* with him *Arthur Silverblatt,* for appellants.

*Henry Thalenfeld,* with him *Benj. R. Jones, Jr.,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 7, 1952:

The appeals are from a decree of the Court of Common Pleas of Luzerne County, dismissing upon preliminary objections a bill in equity of grandchildren (plaintiffs) seeking to set aside a deed of real estate executed and delivered by the parents of such grandchildren to the grandmother (defendant). This case, therefore, comes before us solely upon the pleadings. Defendants filed ten preliminary objections to plaintiffs' bill. In sustaining two of defendants' objections, the court below ruled that plaintiffs' claim was barred by the statute of limitations and by laches. Plaintiffs contend that these preliminary objections should have been dismissed or, at least, that plaintiffs should have been permitted to amend their bill to include allegations demonstrating lack of laches.

The claim arises from the transfer without named consideration in 1928 of certain properties in the Township of Wilkes-Barre by Abraham and Anna Gast, parents of plaintiffs, to defendant Regina Engel, mother of Anna Gast and grandmother of plaintiffs. The transfer was made subject to an *oral* agreement that Regina Engel (defendant) would hold the properties in trust and manage and administer them for the plaintiffs. Between 1938 and 1947, several of these properties were conveyed by Regina Engel, the defendant, and no accounting was ever rendered to the plaintiffs. Plaintiffs first demanded an accounting in May, 1950, and it was refused. Their bill prays for a reconveyance of the remaining properties and an accounting. All of the facts alleged in the bill must be admitted for the purpose of ruling on these preliminary objections.

At the outset it is necessary to decide exactly what type of trust is alleged by plaintiffs' bill. Plaintiffs seek to avoid the provisions of two sections of the Act

of April 22, 1856, P. L. 532. If this agreement be considered an express trust, it is clearly unenforceable by reason of the provision of sec. 4 of the Act (33 PS sec. 2) which makes void all trusts, not "manifested by writing." On the other hand, if it be a trust arising "by implication or construction of law", sec. 4 will present no obstacle, for such trusts are expressly excepted from its operation. But plaintiffs will then be faced with the mandate of sec. 6 of the same Act (12 PS sec. 83) that "No right of entry shall accrue, or action be maintained . . . to enforce, any *implied or resulting trust* as to realty, but within *five years* after . . . such equity or trust accrued. . . ." (Italics supplied) Plaintiffs attempt to resolve this dilemma by contending in their brief that "we are dealing with an 'express' oral trust, held enforceable despite the Statute of Frauds because of the *confidential relationship.*" (Italics supplied) Their theory would appear to be that such a trust is a unique legal entity which escapes the prohibitions of both sections of the statute, supra. The learned court below quite properly rejected such a novel argument and ruled that the agreement must be enforced, if at all, as a *constructive* trust. Indeed, plaintiffs' own description, quoted above, is almost a paraphrasing of the definition of a constructive trust set forth in Restatement, Trusts, sec. 45 (b) and Restatement, Restitution, sec. 183 (b). The latter reads as follows: "Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if, but only if, . . . (b) the transferee at the time of the transfer was in a confidential relation to the transferor. . . ."

It is the general rule that "constructive" trusts are included in the class of "implied" trusts referred to in sec. 6 of the statute: *Trustees of the Proprietors of Kingston v. Kingston Coal Co.*, 265 Pa. 232, 108 A. 718; *Johnson et al. v. Hobensack*, 318 Pa. 305, 178 A. 40; *Keefer v. McGinnis et ux.*, 365 Pa. 601, 76 A. 2d 410. Plaintiffs have attempted to distinguish these cases on the theory that none of them involves a trust arising by law because of the existence of a confidential relationship between the parties. We see no merit in this distinction. See *McKean and Elk Land and Imp. Co. v. Clay et al.*, 149 Pa. 277, 281, 24 A. 211, in which we said: "a trust, arising by legal implication from his duty as agent, is within the operation of §6 of the act of April 22, 1856. . . ." This is in accord with the general classification of constructive and resulting trusts as types of implied trusts: 65 C. J. 220.

It is clear that a constructive trust *"accrues"*, if at all, at the moment the conveyance is induced by the confidential relationship. While there may exist some dispute on this point, the reasoning of Professor Scott at 3 Scott on Trusts, sec. 462.4, is most logical. Property rights, if any, which plaintiffs acquired by reason of their parents' conveyance were created *at the time of that conveyance*, and any wrongful act of the defendant in later years was merely a repudiation of existing rights. Therefore, the statute of limitations (sec. 6) began to run at the moment of the transfers. Cases from other jurisdictions cited by appellants indicating that such a statute runs only from the moment of open repudiation are inapposite. Since our statute *by its own terms* runs from the date the trust *accrues*, our inquiry is limited to a determination of when the trust came into existence.

It is possible for plaintiffs' claim to be saved, however, by that clause of sec. 6 of the Act of 1856, supra,

which excepts from its operation trusts where there has been "substantial performance." It is true that plaintiffs' present bill alleges no facts which would constitute such performance. However, counsel, recognizing such omission, asked leave in the court below to amend, which was refused. They aver that in such amendment they would allege *admissions* by the defendant, *residence* by one of the plaintiffs in the property, *payments of money* and establishment of *bank accounts* by the defendant with the proceeds of alleged trust property converted. Such matters, if properly proved, would amount to a carrying out of at least some of the alleged purposes for which it is claimed that the trust was originally created and might therefore be regarded as "substantial performance." It is true that twenty-two years elapsed between the creation of this alleged trust and the first demand for an accounting by the plaintiffs. The learned court below may well have doubted that plaintiffs *could* prove circumstances sufficient to justify their acquiescence through so many years. But this is a matter which should be determined at a hearing on the merits. Equity Rule 49 directs that leave to amend be given whenever preliminary objections can be overcome by such amendment: *Gray v. Phila. & Reading Coal & Iron Co. et al.,* 286 Pa. 11, 132 A. 820. Plaintiffs should be afforded the opportunity to show substantial performance if in fact it did exist.

The question of laches was argued at length, but it is clearly governed by the considerations already set forth. If the statute of limitations has run, laches becomes unimportant. On the other hand, if plaintiffs can show substantial performance by the alleged trustee continuing up to a reasonably short time prior to plaintiffs' demand for an accounting in 1950, they will have adequately explained their failure to bring suit during those years.

Decree reversed. The record is remitted to the court below with directions that plaintiffs be permitted to file an amended bill within twenty days from the date of its order. Costs to abide the event.