64 So.2d 154 (1953)
GRABLE et al.
v.
NUNEZ et al.
Supreme Court of Florida, en Banc.
February 17, 1953.
Rehearing Denied March 31, 1953.
Howard P. Macfarlane, W.S. Rodgers, Jr., of Macfarlane, Ferguson, Allison & Kelly, James M. McEwen and Frank P. Ingram, Tampa, for appellants.
W. Frank Hobbs, Forrest O. Hobbs and C.J. Hardee, Tampa, for appellees.
FABISINSKI, Associate Justice.
The appeal in this matter is from a final decree adjudicating a warranty deed absolute in form to be in fact a conveyance in trust. The conveyance was one by a spendthrift son to his mother, dated October 7th, 1921, conveying to her his interest in certain lands in Tampa, which *155 have increased in value over the years until now the interest of the vendor, if unencumbered, is estimated to be worth some $150,000. However, there is nowhere in the record an estimate of its value at the time of the conveyance, and it must be assumed that the stated consideration of the conveyance, $28,000, was, at that time, a just and fair price for the property.
Without going into the details of the testimony, which has been carefully considered, it may be said that the Chancellor, who heard the witnesses orally before himself, without the intervention of a special master, was justified in finding, from such testimony, that both the mother and son were dominated in their conduct in and about the transaction by a stronger personality. The Chancellor did not impute fraud to any one in the transaction. He stated in his decree that
"In order to create a constructive trust actual fraud is not necessary, and where property is gotten without fraud and retained inequitably a constructive trust arises. Smith v. Smith, 196 So. 409, and cases there cited. * * * This record supports no other conclusion but that the deed * * * was merely a conveyance * * * for the purposes herein enumerated and not for the purpose of divesting Herman G. Krause of his interest in the property nor as eliminating him as a beneficiary of the estate."
The Chancellor fully realized that the determination which he made must be related to the circumstances as they existed at the time of the conveyance, and that the fact that property greatly appreciated in value after the conveyance should not, in itself, be taken into account.
Contemporaneously with the conveyance, the following agreement was subscribed by the parties thereto:
"This agreement made and entered into on this the 7th day of October, A.D., 1921, by and between Josie Alford, party of the first part, and Herman G. Krause, party of the second part, both of Hillsborough County, Florida, 
"Witnesseth: That whereas the party of the second part has this day executed and delivered to the party of the first part a deed of conveyance embracing the interest of the party of the second part in the estate of J.H. Krause, deceased, for a consideration expressed therein of Twenty-eight Thousand ($28,000) Dollars, and the parties desire to have the true consideration for the said conveyance expressed in writing, and to that end execute this instrument,  Now, therefore, it is hereby stated and declared that the said conveyance is intended to be an absolute conveyance of all of the right, title and interest of the party of the second part in the estate of the said J.H. Krause, deceased, and it is not intended that the said premises shall be held by the party of the first part in trust for the party of the second part, or as security, and the consideration for the said conveyance is the payment and discharge by the party of the first part of three certain mortgages dated respectively January 30, 1919, February 1, 1919, and March 15, 1920, made by the party of the second part, joined by his wife, to Ruby N. Giddens, recorded in the public records of Hillsborough County, Florida, in Mortgage Book 98, page 496, Mortgage Book 98, page 500, and Mortgage Book 115, page 169, respectively, the indebtedness secured by which at the present time amounts to the sum of $25,305.20, and the payment in cash by the party of the first part to the party of the second part of the sum of $2,530, the receipt whereof is hereby acknowledged.
"And it is hereby expressly covenanted by the party of the second part that the said deed of conveyance is an absolute conveyance of the said premises to the party of the first part and not a conveyance in trust for the benefit of the party of the second part, or a security for any indebtedness, there *156 being no indebtedness due or owing by the party of the second part to the party of the first part.
"In witness whereof the parties have hereunto set their hands and seals at Tampa, Florida, on this the day and year above written.
 (Signed) Mrs. Josie Alford (Seal)
 " Herman G. Krause (Seal)"
The deed and its accompanying agreement were prepared by and executed in, the office of the Honorable James F. Glen, a highly respected member of the Tampa bar, and a former Commissioner of this court, now deceased. He was engaged by the supposedly dominant personality, Robert F. Nunez, Sr., and it affirmatively appears that Mr. Nunez was present during the execution of the instruments. Mr. Nunez was at that time by common consent the managing trustee of the estate of which the interest conveyed by Herman G. Krause was a part.
The Chancellor, with justification, may have reconstructed the picture somewhat as follows:
Robert F. Nunez, Sr. is a son-in-law of J.H. Krause, who died intestate June 7, 1900. Nunez was one of three trustees in whom was vested the title to properties belonging to the estate of decedent. He was a half brother-in-law to Herman G. Krause. With the passage of time, by common consent of the other trustees, especially after the death of J. Henry Krause (the only trustee of blood relationship to the deceased) Nunez more and more assumed the position of managing trustee. And also with the passage of time he developed a fanatical devotion to the interests of the clan. He seems to have been meticulously correct in the management of the finances of the estate, although the records in the early days may not have been as complete as might be desired. Certainly there is not the slightest intimation that there was any illegitimate impairment of the corpus or income of the estate as such. As a result of the management of the estate by the trustees for a period of over fifty years, they have succeeded in retaining it completely within the family circle. The income has consistently been distributed, as have funds arising out of sales of the properties; but by appreciation in the value of property, the estate is valued at something over a million dollars at the present time. Nunez had at all times, up to the institution of this suit, the complete confidence of all beneficiaries of the estate.
The widow of J.H. Krause is still living, and is about eighty five years of age, as is Robert F. Nunez, Sr. The widow, now known as Josie Alford, but again a widow, was the second wife of J.H. Krause, and had by him two children. As the widow of Krause and by electing to take a child's part, she inherited one-eighth of his estate. Later one of her children died, and she inherited from that child an additional one-eighth interest. Thus at the time of the opening of the drama to be unfolded, she had a two-eighths interest in the estate, and her son Herman G. Krause had an eighth interest. Herman G. Krause died in 1944, intestate, leaving a widow and one child, now Mary Josephine Sandahl. The latter are the persons most directly interested in securing on this appeal the benefits of the decree by the Court below.
Herman Krause returned as a veteran of the First World War still a minor. Disabilities of non-age were removed by court order. On October 7th, 1921, when he conveyed his interest in the estate to his mother, he had barely reached his majority in point of actual age. By that time he was already considered a failure in business and a spendthrift. He was indebted to one Ruby Giddens, a sister of Robert F. Nunez, Sr., in the amount of $25,305.20. Nunez acted as the business agent of his sister, and notice may be imputed to her of all transactions to which attention is directed. In fact, it may be said now that as to all subsequent transactions every one concerned may be said to be charged with notice, because of the fiduciary character of one kind or another that Nunez bore to the parties concerned. The indebtedness of Herman Krause to Ruby Giddens was secured by mortgages on his undivided interest in the estate. Nunez as the agent *157 of Ruby Giddens, or she herself, might have foreclosed the mortgages, and Herman Krause would quite certainly have been unable to redeem. However, if this had been attempted, there was a grave risk that persons outside of the family might purchase at foreclosure sale. This was of all things what Nunez desired least, and was probably the moving cause of the suggestion that Herman convey the property to his mother. In any event, quite evidently at the persuasion, or at least the advice, of Nunez, the transaction was arranged. The details appear quite clearly from the contemporaneous agreement already copied above. The meticulous care with which every intendment against the construction of the deed, absolute in nature, as anything except what it purported to be, was drawn, indicates the fear that it might be otherwise interpreted. This fear, however, was natural since the documents were drawn by counsel employed by one in a fiduciary capacity, and a recital of the actual facts was a natural safeguard.
As a result of the conveyance to his mother by Herman Krause, Josie Alford was possessed of three-eighths interest in the estate. Josie Alford contemporaneously mortgaged such three-eighths interest to Ruby Giddens in the same amount as constituted the consideration for the conveyance to her of Herman's one-eighths interest. Since it may be assumed that Herman's interest was worth at least the stated consideration, the multiplication of security to Ruby Giddens by three times that which he originally had is a circumstance to be considered.
Herman Krause and his family continued to receive allotments from the distribution of the estate right up to the time of the filing of this suit, in amounts which did not exactly equal a distribution of a one-eighth interest, but approximately such amount. Most, if not all, of the allocations were charged to the interest of Josie Alford, but some may have been through the generosity of Nunez himself. But they seem to have justified an assumption upon the part of the wife, and later to the daughter of Herman Krause, that things were going on exactly as before the conveyance. From the date of the conveyance there were no payments in any form from the estate directly to Herman Krause or his family.
Because of improvidence in the management of her affairs (improvidence which may have been encouraged, and evidently not discouraged by Nunez, upon whom she depended for advice), in the year 1935 Josie Alford was indebted to Robert F. Nunez, Sr. and one Mary G. Reeves in the amount of $80,000, and to Ruby Giddens in the amount of $20,000. And in that year she gave to Nunez a binding option to purchase her then three-eighths interest in the estate for $100,000. For reasons of his own he kept the matter secret (except that he recorded the option promptly), and conveyances of fractional parts of such interest, made to various individuals in the family, were kept off the public records of the County until just before this suit was brought. And also for reasons best known to himself, he took title to 23/480ths interest in himself, leaving 1/480th interest remaining in the name of Josie Alford, subject to his later disposition.
Josie Alford has continued to maintain her complete confidence in Mr. Nunez, and testified without qualification that the deed from Herman Krause to herself in October, 1921, was an absolute conveyance, and made with the intent of herself and of her son to vest the fee simple title absolute in her.
Robert Nunez, Sr. was under no obligation to check the extravagance of Herman Krause and of his mother, but his zeal in retrieving, or rather retaining, their undivided interests in the estate, for the stated purpose of keeping them in the family, tended to enrich him and those relatives of his to whom fractional interests were conveyed. And it is reasonably certain that if he had exerted his influence to check such extravagance, the appreciation in the value of the estate would quite certainly have eventually saved the properties for the vendors Josie Alford and Herman *158 Krause. Mr. Nunez justifies the purchase by him of these interests in his determination to prevent the diffusion of the estate beyond the limits of the family. He points to the fact that the original interests were held in fractions of ninths, instead of eighths, and that by consent of all beneficiaries he succeeded in obtaining the outstanding interests of a deceased beneficiary for the benefit of the estate as a whole, resulting in the accretion to each surviving beneficiary of the increment. He says that he desired to do the same with the Herman G. Krause interest, but could not secure the consent of the other beneficiaries to do so, and that failing such consent he arranged the transfer to Josie Alford, and no doubt the same contention would be advanced as to the eventual purchase of the combined interests of Josie Alford and Herman Krause. No reliable calculations are available to show that the purchase of the latter interests for $100,000 in 1935 was other than for a fair consideration.
If, in fact, the Chancellor viewed the transaction as we have here outlined, then the situation certainly challenged his sense of justice, and his apparent determination to apply the principles of equity to arrive at a correct conclusion.
We would certainly fail to complete the picture presented without noting that appellees first assumed the position that on October 7, 1921, when the conveyance was made by Herman Krause to his mother, there was a contemporaneous written agreement in existence showing the transaction to be either a mortgage or an express trust for the use and benefit of Krause, and that such agreement was lost from among the papers of Krause after his death in 1944. When the direct opposite was shown by the real agreement, appellees shifted their position and claimed that it was a forgery. Forced to abandon that position by irrefutable facts, they assumed the position here presented,  of a dominating, arrogant, avaricious personality, abusing the confidence reposed in him by the parties, and abusing his fiduciary character, to make gain for himself and his close relatives. And further, taking a view into the future, if appellees are successful in maintaining the last position, upon the death of Josie Alford, they being her only heirs, will be in an extremely favorable position to urge the same relief as to the conveyances by Josie Alford of her two-eighths interest (as augmented to three-eighths by the conveyance from her son). So that the final decision is of extreme importance to both appellants and appellees.
The principal question argued by appellants, an affirmative answer to which will obviate the necessity of considering the other five, is the sixth, stated as follows:
"Where a deed absolute on its face purporting to convey for a valuable consideration an interest in real property was recorded on October 8, 1921 in the public records of Hillsborough County, Florida, in which the real property was situate, and remained of record undisputed, unchallenged, unquestioned, unattacked of record, or otherwise, for more than twenty years while the grantor remained alive, does Section 95.23, F.S.A. bar the widow and daughter of the grantor thirty years after the recordation of the deed and five years after the death of the grantor from maintaining an action to nullify the effect of said deed as the absolute conveyance of real property which it purports to be and to impress upon the title a mortgage or trust?"
The trial court answered this question in the negative. Section 95.23, F.S.A., reads as follows:
"After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title.
"After the lapse of twenty years all such deeds or wills shall be deemed valid and effectual for conveying the lands therein described, as against all persons who have not asserted by competent record title an adverse claim."
*159 Appellants rely on Barnott v. Proctor, 128 Fla. 63, 174 So. 404, and Montgomery v. Carlton, 99 Fla. 152, 126 So. 135, as establishing the applicability of Section 95.23, F.S.A. to situations such as the one here presented. While it may have no significance insofar as the present case is concerned, it is well to point out that the court, in the first case, attached some importance to the fact that estoppel was an element involved. And that in the second case, grantees under the challenged deed had been in possession for over twenty years.
Appellees, on the other hand, point to the case of Wright v. Blocker, 144 Fla. 428, 198 So. 88, which held Sec. 95.23 inapplicable to a conveyance which was shown to be a forged deed. The Chancellor referred to the cited case in his decree, and said of the conveyance involved in this case: "If the conveyance orginally was security for the benefit of creditors of Herman G. Krause, it remains such". We suppose he applied the familiar rule, "Once a morgage, always a mortgage", at least by analogy.
It will be seen from our synopsis of facts that the conveyance was made October 7, 1921. The death of Herman G. Krause occurred in 1944, more than twenty years thereafter. And suit to declare the conveyance a mortgage was not instituted until the year 1949. So it is that even in the lifetime of Krause, the statute had already run, if the letter of the statute is to be followed.
As has already been pointed out, the Chancellor did not hold the conveyance to be a mortgage, but found that a constructive trust existed. However, in order to dispose of all phases of the controversy, it is essential to determine whether, if construed to be a mortgage, the right of redemption has been barred by limitation or laches. We may eliminate laches, as such, as the rights of innocent third parties have not intervened, nor have the positions of interested parties been materially affected.
The rule is well settled, and has been applied in cases involving the right of redemption under deeds in form absolute which have been determined to be in fact mortgages, that the mortgagor or grantor may redeem until the right has been barred by limitation, and that the period of limitation begins to run from the time that the right of foreclosure accrues to the grantee, or from the time that grantee takes possession adversely to the grantor. Here, considering for our present purposes Nunez as the real party grantee an interest possession never actually changed hands, as he was at all times in physical possession as trustee, and, except from his own testimony and that of Josie Alford, no date is established as marking the time, if any (until the date of suit), that he began to claim adversely.
The mortgage of Josie Alford, dated October 7th, 1921, giving her augmented three-eighths interest in the J.H. Krause estate as security, was payable three years after date, and the right of foreclosure thereof accrued on October 7th, 1924. Herman Krause died in 1944, and the tolling by reason of his death of our twenty year statute of limitations upon the enforcement of instruments under seal, could not have extended more than three years after his death, under Section 734.29, F.S.A. Since the right of redemption and the right to foreclose are reciprocal, a bill will not lie to have a deed absolute declared a mortgage when the statute of limitations has run. Of course, if we consider the mortgages to Ruby Gidden by Herman Krause himself as the obligation upon which the bar of the statute is to operate, the period of limitation would have expired before his death. Fowler v. Haggins, 209 Ala. 176, 95 So. 816; Leland v. Morrison, 92 S.C. 501, 514, 75 S.E. 889, Ann.Cas. 1914B, 349, are examples.
Constructive trusts are subject to statutes of limitation, and the period of limitation commences to run from the time when the trust came into being. Hayes v. Belleair Development Co., 120 Fla. 326, 162 So. 698; Gast v. Engel, 369 Pa. 137, 85 A.2d 403.
The Chancellor called the transaction a constructive trust, but he would not be in *160 error, if a trust actually existed, whether it was actually a mortgage, an express trust or a resulting trust, if the right of redemption is still outstanding.
The statutes of limitations do not operate against a resulting trust until the trustee has disclaimed the trust and begins to hold adversely to the beneficial interest. Bailey v. Scribner, 97 N.H. 65, 80 A.2d 386, is an example of this doctrine applied. However, a resulting trust never comes into being when it affirmatively appears that a resulting trust was not intended. De Hihns v. Free, 70 S.C. 344, 49 S.E. 841.
We may eliminate the possibility of an express trust by the very terms of the conveyance, and the contemporaneous written agreement. Parole testimony will not be received to establish an express trust, as distinguished from other forms of trusts, when the parties have solemnly declared in writing that there was no trust. We believe that no citation of authorities is necessary to sustain this position. We exclude from this assertion, of course, the doctrine of reformation of instruments on the ground of mutual mistake, fraud, etc. However, we cite, as illustrating the principle, Thomas v. Scutt, 127 N.Y. 133, 27 N.E. 961, text pages 963, 964, confident that it expresses the rule. See also Bilbo v. Ball, 194 Iowa 875, 188 N.W. 753, text page 760; Matthews v. Porter, 16 Fla. 466.
The admission of parol testimony to establish a conveyance absolute in form to be in fact a mortgage is an exception to the general rule. Marsh v. McNair, 99 N.Y. 174, 1 N.E. 660, text 663, 664; the reasons for the exception, and the philosophy of decision in such cases is there very lucidly stated. It tracks in its reasoning the case of Matthews v. Porter, supra.
In Courts of Equity there is no such thing in fact as a statute of limitations, but in the application of the doctrine of laches Courts of Equity, while not bound by, usually act or refuse to act on the basis of, provisions in statutes of limitations relating to actions at law of like character. Hayes v. Belleair Development Co., supra.
Summarizing, it is clear that under no interpretation of the law and facts as applicable to this case, could there possibly be in existence either an express or resulting trust; and, in fact, no such claim is made. If a constructive trust came into existence as a result of the transaction here involved, any rights Herman Krause ever had thereunder were barred by laches before his death. If it is to be considered as established by the evidence that the conveyance was in fact a mortgage, the right of the heirs of Herman Krause to redeem therefrom is also barred by laches. If neither of the two latter statements were made applicable, his heirs are nevertheless barred from all relief by the provisions of Section 95.23, F.S.A. We have no hesitation whatever, from the showing of the lapse of time since the execution of the conveyance, and the terms of the contemporaneous written agreement, in applying the statutes of limitations as a complete bar to the cross-complaint of appellees, as being laches.
Being of this view, which is decisive of the controversy, it is unnecessary to consider other questions involved.
Reversed, with directions to dismiss the cross-bill, and to deny the prayers for affirmative relief under the answer of appellees.
TERRELL, THOMAS, SEBRING and MATHEWS, JJ., concur.
HOBSON, C.J., and ROBERTS, J., dissent.
ROBERTS, Justice (dissenting).
The Chancellor, who heard the witnesses, found that the deed from Herman G. Krause to his mother "while intended to place the legal title of the 1/8 interest in his mother, Josephine Alford, was for the purpose of protecting his indebtedness to members of the Krause family and for the further purpose of preventing outsiders from acquiring an interest in the trust estate, but not to divest Herman G. *161 Krause of his beneficial interest therein." The evidence is ample to sustain such finding of fact; and, under the rule that constructive trusts arise "when property has been obtained fraudulently, or gotten without fraud and retained inequitably", Smith v. Smith, 143 Fla. 159, 196 So. 409, 410, the Chancellor did not err in holding that a constructive trust existed in favor of Herman G. Krause and, upon his decease, in favor of his heirs.
Nor, in the opinion of the writer, is the claim of Krause's heirs barred by laches. While it is a general rule (followed by this court) that "in the application of the doctrine of laches courts of equity, while not bound by, usually act or refuse to act on, the basis of provisions in statutes of limitations relating to actions at law of like character", Hayes v. Belleair Development Co., 120 Fla. 326, 162 So. 698, 700, there are well-recognized exceptions to this general rule in its application to actions to establish a constructive trust. See 54 C.J.S., Limitations of Actions, § 179(2), p. 157; Restatement, Restitution, Sec. 179; Draws v. Levin, 332 Mich. 447, 52 N.W.2d 180; Johnson v. Wheeler, 360 Mo. 334, 228 S.W.2d 714; Stout v. Oates, 217 Ark. 938, 234 S.W.2d 506; Douglas v. Douglas, 103 Cal. App.2d 29, 228 P.2d 603; and Bremer v. Bremer, 411 Ill. 454, 104 N.E.2d 299.
In the instant case, the Chancellor found, as a matter of fact, that "From the date of deed of the conveyance to Josephine Alford until the commencement of this litigation, although Herman G. Krause was divested of the legal title, his wife and daughter continued to share in the proceeds of the trust which at times though meager, over the period of years amounted to thousands of dollars. The evidence further shows that, in addition to participating in the estate, neither the widow and daughter, nor Herman G. Krause during his lifetime, were ever advised they had no interest in the property and the first notice was the institution of this suit wherein the heirs of Herman G. Krause were not listed among those holding an interest in the property." In the opinion of the writer, where a constructive trust arises under circumstances such as those in the instant case  that is, where the trustee, occupying a relationship of trust and confidence towards the cestui qui trustent, continues to all intents and purposes to discharge the obligation of the trust  the defense of laches should not, in equity and good conscience, be permitted to bar relief where the injured parties sought relief within a reasonable time after acquiring knowledge of the fact that the trustee had repudiated his trust. See Bremer v. Bremer, supra.
In the case of Gast v. Engel, 369 Pa. 137, 85 A.2d 403, 406, cited in the majority opinion, it was held that the five-year statute of limitations applicable to a cause of action to establish a constructive trust started running from the date of the conveyance upon which such trust was based; but the court also stated that "On the other hand, if plaintiffs can show substantial performance by the alleged trustee continuing up to a reasonably short time prior to plaintiffs' demand for an accounting in 1950, they will have adequately explained their failure to bring suit during those years." While this particular decision was based upon a Pennsylvania statute, we think that the principle enunciated is equally applicable to a decision on the question of laches in the instant case, and that the "substantial performance" by the trustee here was sufficient to work a postponement of the statute.
I would affirm the decree of the lower court.
HOBSON, C.J., concurs.

On Petition for Rehearing.
FABISINSKI, Associate Justice.
Appellees Robert F. Nunez, III, Ann Nunez Cusick and Kate Nunez have filed a separate motion for rehearing pointing out that the Court failed to dispose of a separable question propounded by such appellees, as follows:
"Where Robert F. Nunez, Sr., while trustee of the J.H. Krause trust estate unlawfully procured his appointment as ancillary administrator C.T.A. of the Estate of Rose Higgins, deceased, *162 which latter estate was the owner of a one-eighth interest in the J.H. Krause trust estate, are the beneficiaries of the Higgins Estate barred from seeing the records of the Krause Estate to determine if there is any undistributed corpus or income due the Higgins Estate, when Robert F. Nunez, Sr., as ancillary administrator, C.T.A. of the Higgins Estate and Trustee of the Krause Estate, refused to furnish such information."
Discussion of facts and law involved in the decision of this question would serve no useful purpose to the bench and bar, but we are satisfied that the decision of the Chancellor was correct and the order giving rise to the question as propounded is affirmed, and a rehearing thereon is denied.
TERRELL, THOMAS, SEBRING and MATHEWS, JJ., concur.
ROBERTS, C.J., and HOBSON, J., dissent.