159 So.2d 465 (1963)
Shirley Mitchell GRAPES, Miriam Mitchell Arien, and Rita Mitchell Nichtberger, Petitioners,
v.
Ruth E. MITCHELL, individually and as Executrix of the Will of Sam Mitchell, Deceased, Respondent.
No. 32285.
Supreme Court of Florida.
November 15, 1963.
Rehearing Denied January 30, 1964.
*466 Redfearn, Ferrell & Simon, Miami, for petitioners.
Sibley, Grusmark, Giblin & Levenson and Irving B. Levenson, Miami Beach, for respondent.
HOBSON, Justice (Ret.).
This case is here on petition for writ of certiorari filed by three daughters of Sam Mitchell, deceased, who pray that we quash the decision and order of the District Court of Appeal, Third District, which denied them relief on the ground that no resulting trust in their favor had been established.
The District Court denied a petition for rehearing and voluntarily certified "that the decision of this court in this case `passes upon a question * * * of great public interest' because the decision involves an important and novel question relating to the law of trusts."
It appears that Sam Mitchell and Ida Mitchell were husband and wife and that they had three children, the petitioners here. The mother died March 15, 1947, intestate, leaving as her only heirs her husband and these three daughters. The widower and father was appointed administrator and proceeded with the administration of the estate which consisted primarily of a halfinterest in the Ritz Haven Motel. In February of 1948, the father caused the daughters to sign waivers which purported to transfer to the father all interest they had as heirs of the mother's estate. Petitioners and numerous witnesses testified that these acknowledged but unwitnessed waivers were secured solely for the purpose of convenience in managing the estate property. Later in 1948, an order of distribution was entered, distributing the entire estate to Sam Mitchell. Four years later, Sam Mitchell and one Joseph Batkin, the co-owner of the Ritz Haven Motel, agreed to sell this part of Ida Mitchell's estate, but before the transaction was closed the buyers required deeds from the daughters as heirs of the estate. Obviously, the buyers realized that the waivers and the order of distribution to Sam Mitchell were not sufficient to convey good title. See In re Weiss' Estate, Fla.App., 102 So.2d 154 (1958). The father secured, without a monetary consideration, quit-claim deeds to the motel from his daughters and their husbands and sold the property. Seven months after the execution of the deeds Sam Mitchell married the respondent, Ruth E. Mitchell. Within twelve days of the marriage he put the home in which he had lived with his former wife and daughters into an estate by the entireties, and transferred all his bank accounts to joint accounts with his wife. In August of 1959, Sam Mitchell died testate, leaving all of his estate to his wife, the respondent. The petitioners seasonably filed separate complaints against the respondent, individually and as executrix, each seeking her share from the estate of her mother still held in trust by their father at the time of his death. The complaints, being practically identical, were consolidated and tried as one case.
The chancellor found that the equities were with petitioners and recognized a resulting *467 trust in their favor. A judgment was rendered against respondent for $37,828 (together with interest from the date of the sale of the property) which was threefourths of the proceeds from the halfinterest that Ida Mitchell had owned in the Ritz Haven Motel. No interest was decreed from the date of the waivers in 1948 because evidence was not submitted to establish the amount of income.
Upon appeal the District Court determined that the facts of the case did not bring it within the concept of a resulting trust and thereupon reversed the decree of the lower court. The question for this Court to decide is whether the facts and evidence bring this case within the orbit of a resulting trust.
Petitioners allege that through agreements with their father he was to hold their respective interests in trust for them in order to more easily transact the business of the estate. They allege that they had confidence in him and that a resulting trust arose as a consequence of the agreement between father and daughters. Petitioners allege that they acquiesced in the demand for quit-claim deeds when the father had found a buyer for the property, continuing to trust him with their share of the proceeds from the sale of the estate property just as they had trusted him with the full management of their mother's estate.
Respondent contends that the estate involved real property and the sale thereof, that the deed recited consideration which cannot be questioned as between the parties, and that the oral trust failed under the provisions of F.S. Sec. 689.05, F.S.A.
It is noteworthy that the District Court proceeded on the theory that the petitioners' interest was in real property because among the facts recited in its opinion is the sentence, "Each of the daughters (appellees) filed separate but identical complaints seeking to impose a resulting trust upon realty which they allege their father was holding for their benefit at the time of his death." It is evident, however, from the record before us the petitioners consistently contend by their complaints and the evidence presented that the subject of controversy is "the share of the estate" left by their mother and the proceeds of which, from whatever source, were held by their father in trust for them. Nowhere do they question the validity of the conveyance of the real property to innocent third parties some five years previous to Mitchell's death. They merely contend that the proceeds from the estate property are impressed with the trust.
Most of our decisions orient a resulting trust within the context of a real property transaction. Sorrels v. McNally, 89 Fla. 457, 105 So. 106; Grable v. Nunez, 64 So.2d 154, Fla. (1953); Wadlington v. Edwards, 92 So.2d 629, Fla. (1957); but a resulting trust may also arise in personalty if the elements of a trust are present. Bogert on Trusts, Chapter 7. "A resulting trust is simply a status that automatically arises by operation of law out of certain circumstances. * * * In the creation of a resulting trust it is essential that the parties actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent." Wadlington v. Edwards, supra. In a resulting trust "[A] vital element is the intention which will be presumed from the facts." Smith v. Smith, 143 Fla. 159, 196 So. 409 (1940). This case clearly falls within the orbit of the definition of a resulting trust as laid down in Wadlington, but had Florida followed the rule: "A resulting trust is one which exists because of inferred or presumed intent of a property owner, as distinguished from a trust based on intent which is directly and clearly expressed," Bogert on Trusts, Chapter 7, page 301, courts of law and equity in the interest of justice would enforce an intent vocalized but unfulfilled. Even on the theory that some courts hold: A resulting trust arises where a person makes or causes to be made a disposition of the legal estate in property under circumstances which raise an inference that he does not intend that the person taking or holding the property *468 should have the beneficial interest in the property, see Morton v. Williams, 190 Okla. 374, 123 P.2d 960 (1942), the petitioners would be entitled to their prorata share of the proceeds from the sale of the motel as a resulting trust because Sam Mitchell, although he had consistently maintained that he would "take care" of his daughters, failed to reserve the trust estate in the will he drew in favor of his second wife and had without reservation put all the assets of the estate in joint accounts with his wife in violation of his trust. Regardless of whether respondent exerted undue influence over her ill and aging husband in securing his funds in joint accounts and becoming sole beneficiary under his will, or whether he actually intended to repudiate his trusteeship, she should not be permitted to become unjustly enriched as a result of the father's violation of his confidential relationship with his children. Kauffmann v. Kauffmann, 150 So.2d 251, Fla.App. (1963).
We feel that the record supports the contention of petitioners that Sam Mitchell in his advantageous paternal position secured waivers from his three young daughters so that he could more easily manage the affairs of the estate which included numerous business transactions involved in operating a motel. Clearly the waivers were signed for the sole purpose of allowing the father to manage the estate for the family, and the quit-claim deeds were executed pursuant to the same plan that the father, with his business experience, should sell the estate property in order to obtain the best financial results available, results that would be to the advantage of all who had a beneficial interest in the estate. Neither the evidence nor reason supports the proposition that the waivers or the quit-claim deeds were gratuitous acts on the part of the petitioners. The consideration for both waivers and deeds was the consistent promise that the father would keep the shares of the estate inviolate for his daughters. There is abundant testimony in the record to the effect that Mitchell often referred to his intent to honor his trusteeship but even had he actually intended to defraud his children of their share of their mother's estate, equitable relief would obtain as between the immediate parties because of fiduciary violation or fraudulent procurement or concealment. Mills v. Mills, 112 So.2d 298, Fla.App. (1959).
Had the father been remarried at the time of the execution of the waivers or later of the deeds, it is quite likely some written trust agreement would have been demanded or a prompt distribution of the assets of the trust estate would have been required, but at the time of the execution of the instruments to their father, petitioners were the natural objects of their father's bounty. It is understandable that after their father's remarriage, when the waivers and deeds had already been signed, the daughters would be reluctant to make an overt move to enforce their legacy, fearing the ire of a step-mother, but all the while trusting that their place in the affections of their father would remain inviolate and that he would faithfully perform the duties imposed upon him as trustee. See Reed v. Fain, 145 So.2d 858, 871 (Fla. 1961). Evidently, the first notice that petitioners had that the father had violated the trust was when he died without making provision for distributing their shares of the trust funds. When the will was offered for probate they filed their claim. "The statutes of limitations do not operate against a resulting trust until the trustee has disclaimed the trust and begins to hold adversely to the beneficial interest." Grable v. Nunez, supra; Wadlington v. Edwards, supra.
The learned chancellor wrote in his final decree, "Whenever one person takes money or property of another and orally agrees to hold it in trust, a resulting trust arises which may be proved by parole evidence, and neither laches nor the statute of limitations will run against said trust until such time as the trustee denies the trust relationship. The evidence discloses conclusively that Sam Mitchell, as trustee for his three daughters, never denied the trust relationship and in fact admitted it according to the testimony as late as April, 1959, just *469 four months prior to his death. The evidence discloses that his three daughters had utmost confidence in him and never made demand on him to surrender their trust property but trusted him implicitly with it." The evidence was largely composed of testimony by parties to the suit; it was necessary that the chancellor evaluate that testimony, along with the other evidence. In so doing, the chancellor, as trier of the facts, had the right to accept the version of the petitioners and reject that of the widow respondent. It is crystal clear that the evidence completely satisfied the chancellor of the existence of the trust. Respondent's testimony, if believed, would not affect a trust existing prior to her interest in the family affairs.
"A resulting trust may be established by parol evidence and is not in contravention of the statute of frauds. The statute [F.S. § 689.05, F.S.A.] provides that express trusts must be evidenced by some writing signed by the party authorized by law to declare or create such trusts or else it is void and of no effect. This statute, however, has no application to the creation of trusts which arise or result by the implication or construction of law," and further, "It therefore must be held that the allegations of the complaint are sufficient to establish a resulting trust if proved by evidence so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust." Martin v. Wilson, 115 So.2d 573, 574, Fla.App. (1959). Equitable considerations in respect to trust or confidence are not within the area of operation of this statute. Even were it not so that this case involves personalty rather than real property, a resulting trust has been established and "Statutes requiring trusts in lands to be in writing apply to express trusts, but not to resulting or constructive trusts * * *." Reid v. Barry, 93 Fla. 849, 112 So. 846 (1927). "To constitute a valid `trust' in personalty `three circumstances must occur: Sufficient words to raise it; a definite subject-matter; and a certain and ascertained object.' Such a trust may be created by deed or may rest entirely in parol, or may be partly in writing and partly in parol." Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 So. 860 (1917). The instant case meets all of these requirements. "Acts of omission of the trustee in performing the details of the trust will not destroy it." Bay Biscayne Co. v. Baile, supra.
We hold that a resulting trust, as was decreed, was clearly established by the petitioners. The decision of the District Court should be and it hereby is quashed and the cause remanded for further proceedings consistent with the views expressed herein.
DREW, C.J., and ROBERTS, O'CONNELL and CALDWELL, JJ., concur.