456 So.2d 1237 (1984)
STATE OF DELAWARE, ex rel, Richard S. Gebelein, the Attorney General, and the State of Florida, ex rel, Jim Smith, Attorney General, Appellants,
v.
J.C. BELIN, T.S. Coldewey, W.L. Thornton, William B. Mills, Alfred Dupont Dent, Jacksonville National Bank, and the Nemours Foundation, a Non-Profit Florida Corporation, Appellees.
Nos. AS-119, AS-255.
District Court of Appeal of Florida, First District.
September 19, 1984.
Rehearing Denied November 1, 1984.
*1238 John F. Corrigan of Ulmer, Murchison, Ashby, Taylor & Corrigan, Jacksonville; of counsel: Charles M. Oberly, III, Atty. Gen., Fred S. Silverman, State Sol., Regina M. Mullen, Deputy Atty. Gen., State of Del., Dept. of Justice, Wilmington, Del., for appellant State of Del.
Jim Smith, Atty. Gen., Mitchell D. Franks, Chief Trial Counsel, Tallahassee, T. Edwards Austin, State Atty., Sp. Asst. Atty. Gen., Jacksonville, Stephen R. White, Asst. State Atty., Sp. Asst. Atty. Gen., Jacksonville, for appellant State of Fla.
Fred H. Kent, Jr. of Kent, Watts, Durden, Kent, Nichols & Mickler, Jacksonville, for appellees.
JOANOS, Judge.
The States of Delaware (Delaware) and Florida (Florida) appeal from a final judgment of the circuit court finding that the Trustees of the Alfred I. duPont testamentary trust (Trust) had not violated the provisions of the prudent person or prudent trustee rule and had not breached the Stipulation and Settlement Agreement between Delaware, Florida, the Trustees and the Nemours Foundation (Nemours), finding no detriment to the trust beneficiaries or cause for removal of the Trustees by their inherent or potential conflict in serving as officers and directors of corporations whose stock is owned by the Trust, and ordering additional payment of income to the income beneficiary based upon the court's determination of a greater valuation of trust assets than had been made previously. Also appealed is a final order clarifying the final judgment, ordering that payment of not less than 3 percent of $805,290,384.00, less any amounts already paid by the Trust, be made to Nemours for the year 1980. The appeals were consolidated for review. We affirm.
Alfred I. duPont's will provided for the creation of a perpetual, charitable trust which, after the death of his wife Jessie Ball duPont, would pay all of its net income to Nemours, "a charitable institution for the care and treatment of crippled children, but not of incurables, or the care of old men and old women, and particularly old couples, first consideration, in each instance, being given to beneficiaries who are residents of Delaware, ... ." Mr. duPont's express testamentary reason for establishing Nemours was his "firm conviction throughout life that it is the duty of everyone to do what is within his power to alleviate human suffering... ." His will specifically provided that the Trustees should "carry on any business enterprise in which I am interested in my lifetime, ..., or to enter into an incorporation of the same and accept corporate stock in lieu of any individual interest, at such valuation or valuations, or to sell out my paid interest at such price or prices, as in the judgment of my said Executors or Trustees shall seem fair and adequate." Additionally, the will directed the Trustees "[t]o do every and all things that they may deem best for the *1239 conservation, protection and betterment of my estate, as fully and completely as I might do, personally, were I alive and able to act for myself." The initial Trustees were Mrs. duPont, Edward Ball (Mrs. duPont's brother), Reginald Huidekoper (duPont's son-in-law) and The Florida National Bank of Jacksonville, as corporate trustee. The Trust initially was comprised of two companies, Gulf Coast Properties, Inc. and Panama Beach Development Co., consisting of: timberlands; fifty (50) percent interest in St. Joe Paper Co. (St. Joe); St. Joe Telephone and Telegraph Co.; Apalachicola Northern Railroad; Port St. Joe Dock and Terminal Railway Co.; and a substantial block of the common stock of E.I. duPont Co., and other small companies which in turn owned mortgages, notes and other securities. Upon receipt of these assets the Trustees purchased the outstanding interest in St. Joe, merged Gulf Coast Properties, Inc. and Panama Beach Development Co. into St. Joe and began to purchase Florida East Coast Railway bonds while the railway was in receivership, ultimately obtaining a 57 percent interest when the railway came out of receivership. Following the inception of the Trust in 1939, some Trustees died, were replaced, and additional trustees were elected, ultimately leading to Coldewey, Mills, Thornton, Belin, Alfred duPont Dent (duPont's grandson), Ball and Mrs. duPont as Trustees. Mrs. duPont died in 1970. Ball died in 1981, with no successor Trustee appointed. Jacksonville National Bank, successor to Florida National Bank, resigned as corporate trustee in 1982. The present Trustees, Belin, Thornton, Coldewey and Dent, also serve as directors and officers of St. Joe or its subsidiaries. St. Joe, the primary asset of the Trust and a holding company for the consolidated assets, provides the Trustees a vehicle to regulate the Trust income, all of which by the terms of the Trust must be distributed to Nemours.
Delaware's initial complaint filed in 1977, seeking injunctive relief, removal of some of the Trustees and other relief, was dismissed without prejudice for failure to state a cause of action. The trial court dismissed Delaware's amended complaint with prejudice, holding that Delaware did not have standing to bring the suit. The dismissal was reversed in State of Delaware v. Florida First National Bank of Jacksonville, 381 So.2d 1075 (Fla. 1st DCA 1979). In 1980, the parties entered into a "Stipulation and Settlement Agreement" in which the valuation of the Trust assets was settled for 1978 and 1979. For years after 1979, it was agreed that the net income of the Trust or 3 percent of the fair market value of the Trust assets, whichever was greater, would be paid to Nemours. The Trustees would be bound to the prudent trustee's rule to try to raise the Trust income above 3 percent.
For 1980, the Trustees relied upon a $5,500.00 per share fair market value of the St. Joe stock made by an expert appraiser, First Research Corp. This per-share figure was based upon an appraisal requested by St. Joe to calculate the intangible tax due the State of Florida for 1980. First Research valued the St. Joe stock at $5,500.00 per share after applying a 30 percent discount due to non-marketability to the $7,700.00 per share value which was based upon an appraisal of St. Joe's assets.
Following execution of the Stipulation and Settlement Agreement and Ball's death, Delaware amended its complaint twice, with the third amended complaint forming the basis for this action. Delaware charged that the Trustees had not acted in the beneficiaries' best interests, nor had they carried out duPont's intent. Count I charged a breach of the Stipulation and Settlement Agreement by the Trustees' failure to make a fair market valuation of the St. Joe stock when they accepted the First Research appraisal, by the Trustees' retention of underproductive assets, St. Joe stock, and by the Trustees' failure to raise Trust income above 3 percent of the total value of the Trust corpus. Count II sought reimbursement of all funds due by the Trustees' failure to act as prudent trustees in retaining underproductive assets and sought removal of Belin, Coldewey, Thornton and Jacksonville National *1240 Bank as Trustees. Count III charged a conflict of interests in the Trustees' positions as corporate directors and officers and their fiduciary duties as Trustees, alleging specific incidents where corporate decisions were not in the beneficiaries' best interests.
The Trustees answered the third amended complaint, denying any failure to ascertain the fair market value of the St. Joe stock by using the First Research appraisal and alleging that they had paid in excess of three percent of the fair market value of the Trust assets. Previously, the Trustees had counterclaimed, asking the trial court to approve the 1980 appraisal of the Trust assets, to determine there was no duty to maximize trust income to appease Delaware and Florida, and to determine if the continued filing of statements of accounts needed to be made.
The trial that ensued was an extended one with conflicting expert testimonies offered by both sides showing the "proper" valuation of the Trust assets and reflecting the actions which prudent trustees would take. The interlocking relationships between the Trustees and the Trust assets were also shown.
In addressing Count I, the trial court found the First Research appraisal to be valid, proper and believable, with the exception of the application of the 30 percent discount due to non-marketability which was found to have no basis in the evidence. The trial court stated that equally unfounded was the attachment of a premium to the St. Joe stock due to the Trust's controlling interest. No breach of the Stipulation and Settlement Agreement was found since the Trustees had used an expert appraiser and followed the given valuation in paying the 3 percent minimum required by Section 738.12, Florida Statutes (1979). The trial court found that there was no evidence to show that the Trustees had failed to exert good-faith efforts to raise the productivity of the Trust assets. In fact, testimony by the Trustees reflected proposed programs specifically to raise income, one such proposal being a joint-venture between the Trust and Florida East Coast Railroad which was approved by the trial court. In response to charges that the Trustees had failed to provide charitable benefits to the elderly residents of Delaware, the trial court pointed to several projects, including the Nemours Health Clinic, a pharmaceutical assistance program and proposed programs to provide dental care and eyeglasses, to show the Trustees' adherence to the agreement.
The trial court's resolution of Count II focused upon the conflicting philosophies of the opposing parties. Admittedly oversimplifying the issue, the trial court characterized Delaware and Florida as advocating high yields for present beneficiaries, while the Trustees believe duPont clearly intended investment in assets which would provide for beneficiaries in perpetuity. The trial court considered the unique nature of a perpetual trust, requiring that all income be distributed, with no reinvestment, and the testimony of Dr. Peter Williamson, a trustee of several trusts, consultant on matters of investment and trust assets and expert on the effects of inflation on trusts, to conclude that the Trustees' retention of St. Joe displayed asset management to preserve and conserve the Trust assets for the benefit of the beneficiaries, did not breach the Stipulation and Settlement Agreement, and is proper and lawful.
The trial court determined that the alleged conflicts of interests in Count III were no more than potential conflicts created by the Trustees' dual capacity. The trial court found no evidence to show that the Trustees used their status to secure corporate positions, rather the present Trustees were officers and directors long before becoming Trustees. Considering the positions held by the initial trustees and duPont's intention that individuals familiar with his business interests should or could serve as Trustees, the trial court concluded that identity between trustees and corporate directors could lawfully exist, with no basis for discharge unless there was an abuse of discretion. The trial court found that none of the specific acts alleged *1241 by Delaware was a result of divided loyalties or shown to be improper or harmful to the beneficiaries.
Delaware raises three issues on appeal: I. Whether the trial court erred in holding the Trustees' conflicts of interest permissable; II. Whether the trial court erred in accepting the First Research appraisal as the basis for the fair market value of the Trust's interest in St. Joe; and III. Whether the trial court erred in allowing the Trust to retain its interest in St. Joe. Florida raises a fourth issue, IV: Whether the trial court erred in finding no breach of the Stipulation and Settlement Agreement.
I. We agree with the trial court's determination that potential conflict in and of itself is not necessarily improper. A trustee has wide discretion in the exercise of his power and a court will not interfere unless he abuses his discretion. Scott on Trusts, § 193.2 (1967 3rd ed.). Florida courts have followed the well settled rule that where a trustee places himself in a position antagonistic to the trust, he should retire from the trusteeship. Smith v. Fleetwood Building Corp., 120 Fla. 481, 163 So. 293 (1935). The trustees here, however, were officers or employees of St. Joe and its subsidiaries long before they were appointed Trustees. There is no evidence that the Trustees took advantage of their positions and control of St. Joe to install themselves as officers or to benefit themselves personally. We also agree with the trial court's determination that duPont's will evidences an intent that there could or should be identity between Trustees and corporate directors. As shown by the appointment of the initial Trustees, Mr. duPont intended for those involved in his various businesses to be Trustees. Interestingly, as pointed out by the trial court, Delaware and Florida seek removal of only Belin, Coldewey and Thornton, while Alfred duPont Dent, who has the same potential conflict, but who testified favorably for Delaware and Florida, is deemed satisfactory to remain a Trustee. We have found no law, nor have Delaware and Florida cited authority, which prohibits an officer of a corporation whose controlling stock is held by a trust from being a trustee of that trust. In re Flagg's Estate, 365 Pa. 82, 73 A.2d 411 (1950), provides guidance in looking at the administration of the trust, not potential conflicts, to determine if the trustees have acted in the best interests of the trust beneficiaries.
II. While there was conflicting expert opinion as to the value of the St. Joe stock held by the Trust, we see no error in the circuit court's determination that the Trustees did not act other than as prudent persons and prudent trustees when they accepted the First Research appraisal. Admittedly, the fact that First Research was initially hired by St. Joe to value the stock for intangible tax purposes would, at first glance, appear to make the valuation meaningful only for that purpose. The chairman of First Research, however, who was not told prior to the valuation that it would be used to value the Trust, testified that there would be no difference in the valuation for that purpose. Sitting as the trier of fact, the circuit court has the right to accept or reject testimony. Grapes v. Mitchell, 159 So.2d 465 (Fla. 1963). The circuit court, here, accepted the First Research appraisal as valid, proper and believable. We will not disturb this determination on appeal. That the trial court disallowed the 30 percent discount due to non-marketability of the St. Joe stock does not require rejection of the ebasic valuation established by the appraisal. While the trial court rejected the $5,500.00 per share valuation, the appraisal was not found to be lacking. The per share value before applying the 30 percent discount was based upon an evaluation of all St. Joe assets and was properly accepted by the trial court as representing fair market value. The trial court correctly ruled out the 30 percent discount since this was an obviously arbitrary mathematical adjustment having no basis in the evidence.
III. Considering the broad powers given to the Trustees and Mr. duPont's intent that his wealth be used to alleviate human suffering and his apparent underlying *1242 expectation that his wealth would be sufficient or preserved to effectuate his intent in perpetuity, together with the expert testimony of Dr. Williamson, there is ample basis for the trial court's determination that the Trustees did not abuse their discretion in retaining St. Joe. The record further supports the trial court's favorable impression of and reliance upon Dr. Williamson's thorough knowledge of asset management of charitable trusts. His testimony supports a determination that St. Joe can be regarded as the proper vehicle to carry out Mr. duPont's intent and the terms of the Trust.
IV. The major issue regarding the Trustees' adherence to the Stipulation and Settlement Agreement is the provision that the Trustees would work to increase the productivity of trust to higher than the statutory minimum of 3 percent. Since we have concluded that the trial court properly determined that there was no abuse of discretion in accepting the First Research appraisal and in retaining St. Joe, there has been no breach of the agreement in those respects. The record contains competent substantial evidence which supports the trial court's conclusion that the Trustees were working to raise the productivity of the Trust.
Accordingly, the trial court's final judgment and the order appealed are AFFIRMED.
SMITH and BOOTH, JJ., concur.