# ESTATE OF JUAN ALVAREZ and JUANA PALMA v. PALMA

## Case No. 83-41075 CA (08)

Eleventh Judicial Circuit, Dade County

February 12, 1985

### APPEARANCES OF COUNSEL

**Samuel J. Dubbin** and **Vance E. Salter, Steel Hector & Davis,** for plaintiff.

**Albert P. Rosillo** for defendant.

### OPINION OF THE COURT

FRANCIS X. KNUCK, Circuit Judge

This cause was tried by the Court without a jury on January 16 and February 11, 1985. Having reviewed all of the evidence, heard argument of counsel, and being otherwise fully advised, the Court hereby finds that:

1. This is an action originally brought by a mother (Mrs. Juana Alvarez) and daughter (Mrs. Juana Palma) against a son (Ronaldo Palma, son of Mrs. Alvarez and brother of Mrs. Palma). The plaintiff mother and daughter alleged that the defendant son, although owner of record of the residence located at 465 East 52nd Street, Hialeah, Florida (the "home"), actually held title only in trust for the mother.

In the alternative, the plaintiffs requested the imposition and enforcement of an equitable lien on the home. On January 26, 1985, the mother died; her estate has been substituted as co-plaintiff with the daughter.

2. At present, the daughter occupies (and the mother occupied until her recent death) the home, legally described as:

The West 80 feet of the East 283.32 feet of the South ½ of Tract 4, less the LITTLE RIVER CANAL, PETERS PARK, according to the Plat thereof recorded in Plat Book 33, Page 28, of the Public Records of Dade County, Florida; f/k/a Lots 23 and 24, Block 4, less LITTLE RIVER CANAL, PETERS PARK, according to the plat thereof, recorded in Plat Book 12, Page 51, of the Public Records of Dade County, Florida.

3. The Court has jurisdiction over the parties and over the subject matter of this action.

4. The home was purchased on September 5, 1972. The warranty deed delivered at the closing indicated that the defendant son was the grantee, and that deed was subsquently recorded in the Dade County Official Records on October 2, 1972.

5. According to the closing statement, payment of the purchase price occurred as follows:

a. A deposit of $1,000 was paid to the sellers by the defendant son by check on August 7, 1972.

b. $5,053.26 of the cash to close was paid to the sellers by the defendant son by check at the closing on September 5, 1972.

c. The balance of the cash to close, $4,000, was paid to the sellers in cash at closing. The source of those funds is disputed.

d. The remaining portion of the purchase price was funded by a first mortgage loan granted by AmeriFirst Federal (approximately $26,000) and a second mortgage in favor of the sellers for $1,000.

6. The plaintiffs and family members other than the defendant son produced clear and convincing evidence that:

a. The family intended to purchase the home for the plaintiff mother, but asked the defendant son to "handle" the transaction. The mother was, at the time, 67 years old and unable to read or speak English. In addition, she had no steady income with which to qualify for the AmeriFirst mortgage.

b. The family members took up a "collection" of sorts for the new home for the mother, raised as follows:

**71**

(i) The mother herself gave $2,000 in cash to the defendant from her savings;

(ii) Santos Palma, another son, contributed $1,800.00 in cash;

(iii) The plaintiff daughter contributed $500.00;

(iv) Enrique Palma gave the defendant son a check for $5,000.00 to help with the closing, with the understanding that other family members would reimburse him for some part of the $5,000.00; and

(v) A son-in-law, Flavio Del Pino, promised to reimburse the defendant son for any sums the son borrowed in connection with the purchase.

c. Subsequently, Flavio delivered to the defendant son a check for $1,000 as a contribution toward the purchase of the home. In addition, Flavio Del Pino (a) reimbursed Enrique Palma for $2,000.00 of the $5,000.00 contribution Enrique had made to the "kitty" for purchase of the home and (b) paid the $1,000.00 purchase money second mortgage given to the sellers at closing. The defendant son gave Enrique Palma a check for $2,500.00 of Enrique's contribution.

d. Therefore, the contributions to the price of the home (above the first mortgage) are allocated as follows:

| | |
|---|---:|
| Flavio Del Pino (son-in-law) | $4,000.00 |
| Juana Alvarez (plaintiff mother) | 2,000.00 |
| Santos Palma (son) | 1,800.00 |
| Juana Palma (plaintiff daughter) | 500.00 |
| Rolando Palma (defendant son) | 2,700.00 |

7. The record is unclear as to the source of payments for the first mortgage from late 1972 through April of 1974. During that time, the plaintiff mother and various family members, including the defendant son, lived in the home. It also served as a temporary residence and lodging for other members of the family travelling to South Florida from New York, New Jersey, and Cuba. Mortgage payments and other expenses of maintaining the home were paid in cash with whatever funds were available from the family group.

8. The defendant son remained in New York after the closing and through the summer of 1973. He left the home in April of 1974, and never again lived in the home. Thus, despite his record ownership, he has never lived in the home by himself, and he lived in the home with his mother and others for only eight or nine months out of the twelve

72

years since the home was purchased. The mother, on the other hand, resided in the home continuously until her death.

9. Since April of 1974, the plaintiffs have paid all of the mortgage payments and real estate taxes, totalling $36,192.25. The plaintiffs also paid $459.84 for roof repairs, painting, and a fence.

10. On the foregoing record, the plaintiffs and family members (Flavio Del Pino and Santos Palma) other than the defendant have contributed $44,952.09 toward the purchase and the maintenance, taxes, and mortgage relating to the home. The defendant son paid only $2,700.00.

11. The defendant son contends that he rented the home to his mother, and that the mortgage payments by her constituted the rent. Despite the fact that such payments were actually made by the plaintiffs, the defendant son deducted the mortgage interest on his personal federal income tax return. No written or oral lease agreement has been proven, and the defendant's first demand for "rent" and a "security deposit" were made after this action was commenced by the plaintiffs.

12. In conversation, the son (and other family members) routinely and consistently referred to the home as "la case de la vieja"—the home of the old woman, referring to the mother, 78 years of age when she died.

13. Around the time of the purchase of the home, the defendant son took part in a telephone conversation to brother Franklin Palma, then living in Cuba. The defendant son either stated (or overheard without comment) conversation to the effect that "we [the family] have bought mama a house".

14. The defendant son left the file containing the house papers with the mother at the home. From time to time, he borrowed and then returned them. Such conduct is inconsistent with his position that the home was only his, and was always considered to be his, at all times.

15. A resulting trust arises where, as here, the parties intend to create a trust relationship but fail to execute legal documents to that effect. *Grapes v. Mitchell*, 159 So.2d 465, 467 (Fla. 1964). Intention may be presumed from facts raising an inference that the legal titleholder was not intended to have the beneficial interest in the property. *Id.,* at 467-68.

16. The Court finds that the defendant son, then in his twenties, took legal title in trust for his mother, then 67 years of age. Although the defendant son apparently contributed $2,700 toward the purchase of

**73**

the home, the Court finds that the son made that contribution as a gift to his mother; moreover, the son has apparently recovered that investment through the federal income tax deductions he claimed for the property, even while all interest and taxes were actually being paid by the plaintiffs. The Court also finds that the evidence at trial would have supported the imposition of an equitable lien, but the particular facts of this case are more supportive of the resulting trust analysis than the equitable lien alternative.

It is therefore ORDERED and ADJUDED that:

A. The mother's estate is the beneficiary of a resulting trust over the above-described real property subject to the existing first mortgage in favor of AmeriFirst Federal Savings and Loan Association.

B. Within ten days from the entry of judgment, defendant Rolando Palma shall execute and deliver to plaintiff Juana Palma, as personal representative of the mother's estate, a quitclaim deed conveying all of his right, title and interest in said property to his mother's estate.

C. The mother's estate shall continue to discharge all payment obligations with respect to the said AmeriFirst first mortgage.

D. This Court will retain jurisdiction of this cause for such further proceedings as may be appropriate.